23-7272 PNC Bank, National Association v. Dana Transport, Inc. Mr. Brody, whenever you're ready. Excuse me, Judge. Thank you very much. May it please the court, my name is Jan Brody of Corolla Burn and I'm here with Elliot Rothstein and Lisa Minichini on behalf of the defendant appellants. The American rule has been around since at least 1853. Hooper was decided in 1989. It's fair to say that in 2009, the lawyers for each of the plaintiffs, as well as the plaintiffs themselves institutionally, knew about the American rule and they knew about Hooper. And each knew that if it wanted to ensure that council fee indemnification provisions of 16.5 applied to litigation between the plaintiffs and the defendants, they nearly had to include ten simple words. And those words are including actions between borrower and agent and or any lender. Ten simple words. And in fact, they could actually have done it in two words. They could have inserted borrowers or in 16.5 in the phrase instituted or any governmental body. Well, elsewhere in section 2.1, the agreement does use all persons other than borrower. And doesn't that imply that when that phrasing is different, the meaning is also different? I would say that it's fair to say that there are numerous various places in the agreement. In fact, there's over 700 places where they use the term borrower. And they have said borrower and other persons. They have said borrower and other entities. And it's throughout the agreement. But that's not the standard. The implication or an implication is not the standard. The standard is, was established by Hooper, Sage, Gotham Partners, and In Ray Platinum. And if the council fee provision is not exclusive to claims between the parties, which we don't have here. And it's not in express language as to inter-party claims, which we don't have here. There's no express language. Then the intent to waive the American rule must be unmistakably clear. Unmistakably clear from the language of the promise, meaning the provision. And there's a strong presumption against reading indemnification provisions to include direct party actions. And in Sage, which is the Court of Appeals' most recent elaboration on this rule. And by the way, not cited at all, tellingly not cited at all by the plaintiffs in their briefs. Sage tells us that this is an exacting standard. And it rejects decisions relying on broadly worded provisions that by their nature are deemed to have been intended to include fees in direct party actions. So I would submit to the court that the place to go to decide this case, or at least the first half of the case, is Webster. Because in Webster, the appellate division considered the exact same provision. It's exact. And the appellate division decision is binding on not only Wells Fargo, who was a plaintiff in that case, or a defendant, I'm sorry, a plaintiff. But also the plaintiffs in this case, as well as giving guidance, and I would say binding upon this court. It's the exact same language. And what does the appellate division in Webster say? It says, quote, on its face, 17.7, which is the provision in that case, 16.5 in our case, expressly contemplates third party litigation against the lenders, including any governmental agency or instrumentality or any other person, there's any other person, without clearly implying that the parties intended the provision to provide for indemnification in litigation against each other. The quote continues. This provision is fatal to defendant's claim of inter-party indemnification for attorney's fees under 17.7. What do you do with section 16.9 of the agreement, which allows the lender to charge the borrower's account for costs, including attorney's fees, associated with claims against the borrower for foreclosure or enforcement of liens and security interests? How can we have a provision that explains how you can set it off, without having to file a lawsuit or anything else, if the attorney's fees provision doesn't apply to litigation between the lenders and the borrowers? I would submit that 16.9 is a standalone provision with respect to fees, and it's actually called expenses. 16.9 cannot be read into 16.5. The moving parties, or the plaintiffs, did not come to court and say, you owe us our expenses under 16.9. And there's a reason for that, because their expenses would be limited to $35,000. So what I would suggest to the court is, there's your provision. If you want to claim that you're entitled to legal fees in connection with inter-party claims, go to 16.9 and submit a claim under 16.9. They did not do that before the district court. I would submit they waived that. And they went ahead to rely upon 16.5, which under Hooper, I'm sorry, under Webster, the New York Appellate Division found that that provision, virtually identical, does not include inter-party claims. And I don't think you can go and read from another paragraph. If they wanted to pursue us under that paragraph, they would have chosen to do so. They did not. So that's how I would interpret 16.9. It's a separate provision. It may include inter-party claims. But the attorney's fees are limited. So they weren't satisfied with $35,000. They wanted $200,000-plus. And therefore, they chose voluntarily to pursue 16.5. In the face of the decision of the New York Appellate Division in Webster. And I would submit that under that circumstance, we're bound, they're bound, and respectfully, this court is bound by the decision in Webster unless it concludes that the New York Court of Appeals would have found differently, which I don't think there's any- Just so I'm clear, your argument is that unmistakably clear means something more like express or explicit and not just really clear. I'm sorry, Judge, could you repeat that? Your position is that unmistakably clear, as the Hooper test articulates it, actually means explicit or express and not just clear. Because ordinarily, any party means any party. And I think we would typically construe that as the district court did. May I answer that question? My time's running out. I would submit that it doesn't mean exclusive because it's- I'm sorry, it doesn't mean expressly stated. There is a fallback. It doesn't have to be expressly stated. But it has to be unmistakably clear. And the appellate division tells us that this provision is not unmistakably clear. And I would submit to your honors, if you just read it, just by reading it, it's not unmistakably clear. Is there any way to make it unmistakably clear in your view other than spelling out that it applies to inner party suits? This particular provision? Yes. No. That's all I was asking. I just wanted to get clarity. With respect to the willful misconduct argument, and I'll be very brief because I have to be, I just want to point out that a lie such as what PNC did to the defendants in connection with the hedges and swaps, they lied. That's, under any definition, a willful misconduct. Taking the guarantee out of the collateral is definitely willful misconduct. Excluding titles at the specific direction of PNC, definitely willful conduct. And I should just point out that, and I'd like to make this point, that our 56.1 additional statement was unrebutted. And the district court was required to consider our material facts as unrebutted and give an equal weight to the material facts as it gave to the material facts of the plaintiffs. In this particular case, the district court elected not to do so and found facts that were contrary to material facts stated in our additional statement. And which were not contradicted by the plaintiffs who chose not to address it at all and not to challenge them. And I see that my time is up. Thank you, Mr. Brett. Thank you. Mr. Martin. Good morning, Your Honors. May it please the court. James Martin for the lenders and appellees. I'm here with my colleagues, Ms. Bonet and Mr. Pellis. All the parties agree on the unmistakably clear standard applied by the district court. But importantly for New York law, the cases make clear that there aren't any magic words that are required to confer unmistakable clarity. And certainly not the express insertion of borrowers into 16.5 as the parameter for deciding whether there can be inter-party indemnity. I'm trying to figure out then what the scope of Hooper actually is. Because it seems to me that in that very case, and then again in Sage, what you have is a contract that under normal rules of contractual language interpretation would be considered to be general. It applies to anybody. But the court then said, no, there's a presumption. It has to be clearer than that. So I'm just wondering why saying any person is clear enough, because our Hooper and then Sage examples where it's effectively that sort of thing, where the ordinary meaning of the language would be anybody. So, Your Honors, on that score, what the New York cases make clear, Sage and Hooper included, is this is a case by case analysis. Case by case analysis with a thumb on the scale. You'd agree with that, right? Your Honor, I do agree with that. And so where I want to start is that the standard that's applied in determining unmistakable clarity is to look at the entire agreement and the surrounding facts and circumstances on the negotiations for the agreement. When we do that in this case, we have provisions that separate this case from Sage and separate it from Hooper. In Sage, there were two provisions in the agreement that made it impossible to read any person in the indemnity clause consistently within her party indemnity. In this case, we have provisions in the agreement that establish that inner party indemnity is available. What are they? Start with the definitional provisions in section 1.2, which say for purposes of this agreement, the terms shall have these meanings. It's a directive for the entire contract. And in the definitional sections, borrowers is equated with persons and borrowers clearly extends to the individuals involved in this litigation. And borrowers are persons. Nothing in the rest of the agreement takes away from that. So if we're going to read the entire agreement, when we get to 16.5, New York law would require us to put the definition into 16.5. Now, beyond that, your honors, as was pointed out. And there was no such definitional provision in Webster, the appellate division case? So Webster is off point for a number of other reasons, but let me finish with this contract for one second. Beyond the definitional sections, which create the compulsion I just said to read the contract that way, you have the other carve out provisions in this agreement where borrowers are specifically separated from persons when the parties intended that. So if they had intended that for 16.5, it would read differently, but they didn't do it. So 16.5 consistently should be read to have persons mean borrowers. Lastly, there are the other indemnity provisions in the agreement that provide for inter-party indemnity. They also provide for, as the court pointed out, inter-party expenses. So there is no provision in this agreement that takes away from the ability to apply indemnity inter-party. And what do you do with 16.9? That seems to imply a limitation. Is that just that set-offs are different than an application to the court? I mean, why does that limit not apply? 16.9 is an expense provision, not an attorney fee provision. But it says expenses including attorney fees. Yes, but importantly for this case, 16.9 can be read consistently with providing inter-party indemnity for attorney's fees in 16.5. There's nothing in that provision that suggests anything other than that inter-party attorney fees expenses are appropriate. That was the question I asked your adversary. I read it that way, too. But as he points out, that limits the attorney's fees. Why does that limit not apply? If we were proceeding under 16.9, that limit would apply. But 16.5 is a broader indemnity provision for inter-party actions that doesn't contain that limitation. There is nothing in 16.5 or 16.9 that suggests that the limitation in 16.9 should be read into 16.5. So, again... But why do we see them as separate? What is the difference between the two? One is attorney's fees under 16.5 in inter-party actions brought by a borrower generally. 16.9 concerns expenses that lenders have incurred and attorney's fees that lenders have incurred specifically on their own account. And they're trying to recover them back. It's two very different situations. But the point is that 16.9 is not inconsistent and doesn't render meaningless... So, 16.9 applies when you're suing them and 16.5 applies if they file a lawsuit against you and lose, presumably, and lose.  So, looking at Webster for a minute... Can I ask just a quick question on that? Oh, I'm sorry. Absolutely. If under 16.9, Dana was found to... If your clients, if the lenders had breached the contract with Dana, Dana would be liable for the damages they would have to pay anyway. Is that right? Yes. So, isn't that exactly the kind of scenario where one party is at the mercy of the other that this New York presumption is supposed to address? I'm not sure I follow that completely, Your Honor. The New York presumption is rebuttable based on the entire agreement and the negotiations, correct? If your clients breached the contract and sued, and Dana sued, Dana would still be liable, even if it won, to have to pay the damages against itself, I guess. No, I don't think... Is that not the right reading? No, I don't think the contract has to be read that way or create that inconsistency of necessity, right? It's not... The limitation of liability provision, which is where that argument comes from, applies in a different context. It wouldn't be the kind of inner party action we're talking about. So, I don't think it creates the inconsistency the court is suggesting, and it doesn't require the payment of expenses or fees other than when the conditions of 16.9 are met or the conditions of 16.5 are met, which is the provision we're talking about right here. But I'm sorry, doesn't 16.5 say that they have to reimburse you for all... They have to indemnify you for any damages and pay the fees and disbursements of counsel in any litigation brought by anybody? It doesn't say, and if you're right, that it includes litigation brought by them. There's no limitation here that says there's an exception if they sue you and when. No, no, the willful misconduct exception is in 16.5. Well, set aside willful misconduct. Let's just say it's just breach. Well, Your Honor, again, I don't think the agreement of necessity has to be read that way. Well, explain to us why it doesn't have to be read that way. Because it wouldn't make sense? Is that the idea? Yes, yes. I mean, Your Honor, it would not only not make sense, but it wouldn't be determinative of this controversy or this construction of 16.5 in light of the entire agreement. So if we're going to take the entire agreement and the surrounding circumstances under which it was negotiated, the unmistakable clarity comes from the reading that I talked about given every provision in the agreement. And nothing in the agreement renders my construction or our construction of 16.5 meaningless on the one hand or inapplicable on the other. The court doesn't have to go that far under Sage or Hooper. That compulsion isn't in those cases. You were about to get back to my earlier question. We got away from it about Webster. Does Webster not have a definitional section of the sort that this agreement does? It has that provision in isolation in the context that it applies in the agreement. But Webster is not a lender-borrower case like this one. It's a lender-lender case, and the provision in Webster was construed in that context in actions where the lenders were involved, but the section that was construed involved the borrowers, and the court simply said, we're not going to follow that section in this case, lender v. lender. The second thing about Webster that's important, Your Honor, is it doesn't- The definitional provision includes borrowers, but it doesn't include other lenders as any person? That's correct, Your Honor. In that contract, there were two separate indemnification provisions. The lenders were trying to take advantage of the borrower position provision, and the court said no to that on that fact pattern with that single provision that the court identified without regard to any other provisions in the contract, and that's the important distinction. Again, as I said, Sage, Cooper, Webster, all the New York cases are case-by-case. They depend on reading the provisions in the entire agreement, and that's the way you're going to get the applicability of a case to your situation, and two things on that, Your Honor. Webster is not this case. It is factually very different, doesn't consider the provisions that we have, and second, there is no New York case that suggests that the reading of the entire agreement in this situation with the express directives in the definitional sections, the carve-outs, the language of 16.5, and arm's-length negotiations that produced an indemnity clause that covers this case should be rejected. That's unmistakable clarity. Thank you, counsel. Thank you. I'd like to just point out a few things. First of all, starting at the end, in Webster, the court unquestionably considered first the identical clause or provision that we have in this case, and the reason it did that is because the agent, which was the defendant, was arguing that you had to read both clauses together to find an indemnification and a counsel fee provision, and so when you read Webster carefully, you will see that the court unquestionably ruled on our paragraph as well as the other paragraph, but it first ruled on our paragraph, and it said it was fatal. There was no attorney's fees for inter-party claims. Secondly, clearly there was a definitional section contained within that particular contract because of all the uppercase terms, definitely there were definitions. I would submit that under Sage, we're not looking at the entire agreement. We're looking at the particular provision, which, as Sage says, we're not going out to the four corners of the document. We're going to look at the particular provision, and as counsel said, and as your honor said, there are some absurd ramifications, such as the plaintiff sued Dana. Dana wins. Dana has to pay their counsel fees, and while counsel said that wouldn't make any sense, that's what the paragraph reads, their paragraph. It reads that way. It would also result in if a lender sued a lender because a lender is any person under the strict definition, so if a lender sued a lender and won or lost, both lenders could come to Dana and say, here's our counsel fees. You must pay it under 16.5. And I would submit again that not only wouldn't that make sense, what we're all talking about is section 16.5 is not unmistakably clear. Because if it was unmistakably clear, we wouldn't be having this dialogue or questions about what it means. Because it would be unmistakably clear, and it is not unmistakably clear. Thank you very much. Thank you, counsel. Thank you both. I take the case under advisement.